## THE PACTOLAS.

### (District Court, S. D. New York. June 21, 1898.)

SEAMEN—SHORT ALLOWANCE—SCURVY—PROOF INSUFFICIENT.

Upon claims for damages for short allowance and alleged consequent scurvy, on a voyage from Shanghai and Manilla to New York, *held* not sufficiently established by the evidence.

George Whitefield Betts, Jr., for libelants.

Wm. M. Ivens, Harrington Putnam, and E. W. Ivens, for respondents.

BROWN, District Judge. Two libels have been filed in this matter by 13 seamen on board the Pactolas on a voyage from Shanghai and Manilla to New York, to recover compensation for short allowance of provisions, and damages for alleged scurvy arising from this cause. The first libel was filed by 11 of the seamen against the Pactolas in rem, and the other by 2 of the crew against the owners in personam. The answer denies all the charges of the libel.

A very considerable amount of evidence has been taken, including also the testimony of various medical experts as respects the disorder from which several of the seamen were suffering on arrival at New York. The clear preponderance of the medical evidence is that the disorder was beriberi and not scurvy, except possibly in the cases of Olsen and Smith, who showed some symptoms of swelling and bleeding gums and loose teeth, if their testimony is to be believed, which might possibly indicate scurvy; but their recovery in two or three days seems hardly consistent with this theory.

As respects the provisions and any complaints by the seamen, the evidence is very contradictory. The master, first officer and carpenter contradict most explicitly all the charges of the seamen as respects any deficiency of provisions, or any substantial complaints in regard

to the food, its quality or amount. There is so much inconsistency also in the testimony of the seamen on this subject, that I find it impossible to base any decree upon their statements, unless corroborated by other circumstances.

The libelants' counsel claims that their story is confirmed by comparing the number of running days on the voyage with the amount of the beef and pork consumed or supplied. The master testifies that the beef and pork were loaded at New York before departure for Shanghai and that no other was taken on board. He testifies to taking about 21 or 22 tierces of beef; but he refers to the store book kept by him, in which the amount of beef in stock on leaving New York is stated to be 20 tierces, and the amount of pork 14 barrels. The run to Shanghai was made in 177 days. After lying about two months there, the ship went to Manilla upon a run of 19 days, and after a delay of several months at Manilla, sailed for New York, making the trip in 131 days. None of the beef or pork was used during the ship's stay in port, and some fresh provisions were taken on at each place. The master's store book further shows, that on leaving Shanghai he had on board 11 tierces of beef and 8 barrels of pork, not counting opened barrels; and on arrival at New York two of each remained unopened. A tierce contains about 300 pounds of beef; a barrel, about 200 pounds of pork. According to this testimony there was the same amount of beef and pork, viz. 3,900 pounds, used during the trips from Shanghai to Manilla and from Manilla to New York, occupying 150 days, that was used in the trip from New York to Shanghai, occupying 177 days; and yet the testimony of the seamen is explicit that there was sufficient beef and pork on the trip to Shanghai, which was 27 days longer than the trip back to New York. This weakens very much the force of their evidence.

The libelants' proctor submits some arithmetical computations as to the amount that should have been supplied to the men, reckoning 1½ pounds per day of either beef or pork for each of the 22 persons on board the ship. Computed on this basis the ship would not have been sufficiently stocked at the start for 327 days at sea. Several deductions however should be made in this computation. At each port there were fresh provisions supplied, lasting for a certain period. Again, 5 of the 22 persons were in the cabin, for which the testimony shows that there was a very considerable supply of miscellaneous canned meats, which would much diminish the use of salt pork and beef in the cabin, and one of the 5 in the cabin moreover was the captain's wife; so that as respects beef and pork it is doubtful whether the cabin should count for more than 2 persons. The data for any exact arithmetical computation are wanting.

If the 150 days from Shanghai be taken with the stock of beef and pork on hand as given by the captain and confirmed by the entry in the store book, which contains nothing on its face tending to discredit it, and allowing 10 days' fresh provisions taken at the two ports, there would appear to be about 28 pounds of beef or pork consumed per day; and this, making some deductions as respects the cabin consumption, as above stated, would indicate very nearly a full supply to the crew. The officers, moreover, testify explicitly that there was

no restriction ever given as respects the amount of pork or beef to be furnished to the crew; and upon arrival in New York there were 1,000 pounds remaining unopened, besides parts of a tierce and barrel unconsumed, making an abundant supply for more than 30 days. It is hardly probable that the crew would have been kept upon a short allowance with so considerable an amount of surplus beef and pork to remain over at the end of the voyage.

As to the articles of vegetable food and lime juice, the libelants' case is certainly not made out.

The libels are dismissed, but without costs.